**Tammy TAYLOR, Plaintiff,**

v.

**ALBERTSON'S, INC., Defendant.**

**Case No. CIV-93-2150-M.**

United States District Court, W.D. Oklahoma.

Feb. 9, 1995.

Rick W. Bisher, Boettcher & Ryan, Oklahoma City, OK, for plaintiff.

Angelyn L. Dale, Thomas D. Robertson, William K. Turner, Frank B. Wolfe, III, and S.M. Fallis, Jr., Nichols Wolfe Stamper Nally & Fallis, Tulsa, OK, for defendant.

### *ORDER*

MILES–LaGRANGE, District Judge.

This matter is before the Court on Albertson's, Inc.'s ("Albertson's") motion for summary judgment filed September 1, 1994. Plaintiff responded in opposition October 21, 1994.

Plaintiff was employed by defendant from August 1991 until her termination in January 1993. Plaintiff sustained an on-the-job injury in August of 1992. Plaintiff contends she was unable to work because she was disabled due to her injury. Plaintiff filed this action against defendant, alleging her discharge from employment violated the Americans With Disabilities Act ("ADA"), 42 U.S.C.A. § 12101 *et seq.* (West Supp.1994); Oklahoma's Anti–Discrimination Act, 25 O.S. § 1301 *et seq.* (West 1994); and Oklahoma's Workers' Compensation Law, 85 O.S. § 5 (West Supp.1995).

Defendant moved for summary judgment on three grounds: 1) plaintiff is not disabled as defined under the ADA and has not made out a prima facie case, 2) defendant did not wrongfully discharge plaintiff in violation of Oklahoma's public policy, and 3) plaintiff was terminated for job abandonment, not in retaliation for filing a workers' compensation claim.

### *STATEMENT OF UNDISPUTED MATERIAL FACTS*

Plaintiff Taylor had been employed by defendant Albertson's in the position of selector at its Ponca City warehouse since 1991. Plaintiff injured her right hand, arm, wrist and shoulder while lifting cartons of batteries on August 22, 1992. Plaintiff reported the injury and was referred to Albertson's physician, Dr. Paul Davis, for treatment. Dr. Davis released plaintiff to light duty on August 26, 1992. Plaintiff returned to work on August 27, 1992, attempted to perform light duty assignments but continued to have problems with her right arm. Dr. Davis continued her therapy and directed plaintiff to remain on light duty until September 2, 1992. Plaintiff was released to regular duty by Dr. Davis on September 10, 1992.

Plaintiff continued to experience pain and was then examined by her own physician, Dr. Gerard Shea, on September 16, 1992. Dr. Shea initially suspected plaintiff suffered from carpal tunnel syndrome and advised her not to return to work, "indefinitely". Dr. Shea examined plaintiff again on September 19, 1992 and October 9, 1992 and subsequently referred plaintiff for a neurological examination. Plaintiff was examined by Dr. Vaidya, a neurologist on November 24, 1992. Dr. Vaidya reported plaintiff's EMG nerve study was normal which ruled out carpal tunnel syndrome. Upon receiving Dr. Vaidya's negative report, Dr. Shea concluded plaintiff was

suffering from myositis or tendinitis as well as a cervical and a thoracic fibromyositis as a result of the repetitive motion used during plaintiff's lifting activities. *See* deposition of Dr. Shea taken September 8, 1994, pp. 15–17.

Plaintiff continued to be treated by Dr. Shea. Dr. Shea's reports indicate plaintiff was unable to return to work indefinitely on December 12, 1992 and again on December 22, 1992. On December 23, 1992, plaintiff was notified by defendant that a doctor's appointment had been scheduled for her on December 24, 1992. Plaintiff did not attend this appointment.

During discovery in this case, Dr. Shea informed Albertson's he had released plaintiff to go back to work on December 28, 1992. On or about December 30, 1992, plaintiff contacted an attorney. Plaintiff signed a workers' compensation claim form on December 30, 1992 and filed the form on January 5, 1993. Albertson's terminated plaintiff's employment by letter dated January 6, 1993, stating job abandonment as the reason for the termination. Albertson's received a copy of the claim form on January 7, 1993.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. Plaintiff received a right to sue letter from EEOC on September 29, 1993 stating plaintiff does not meet the ADA definition of a qualified person with a disability.

On December 3, 1993, plaintiff filed a complaint in this Court, alleging Albertson's terminated her employment based on her disability or perceived disability in violation of the ADA as well as state public policy. Taylor also asserted a claim for workers' compensation retaliatory discharge.

### SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact is genuine if a "reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court is not permitted to weigh the evidence submitted by the parties. Rather, the Court must view all facts and any inferences that might be drawn from them in the light most favorable to Taylor, as the nonmoving party. *Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 (10th Cir.1994).

Taylor alleged Albertson's terminated her employment in violation of the ADA. Albertson's asserts Taylor has not made out a prima facie case under this federal cause of action. The Court considers the facts in the light most favorable to Taylor and Albertson's challenges to Taylor's legal conclusions as the basis for its analysis of the federal statute.

### PLAINTIFF'S CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT

The Americans With Disabilities Act ("ADA") states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (West Supp.1994). Defendant argues plaintiff's condition does not rise to the level of a recognized disability under the ADA. The Court agrees.

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8). The threshold issue in this case is whether Taylor is "an individual with a disability." "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such

an impairment." [1] *Id.* at § 12102(2). "Major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1994).

The Tenth Circuit Court of Appeals recently addressed this issue in *Bolton v. Scrivner, Inc.,* 36 F.3d 939 (1994). Bolton sued his former employer under the ADA. Bolton suffered several on-the-job injuries, most recently to both feet, while working at Scrivner's warehouse as an order selector. Although Bolton was certified by several medical doctors as able to return to work, Scrivner had a policy of prohibiting injured workers from returning to their positions unless they were found to be 100% fit by the company's doctor. While Bolton contended he was able to return to his job, Scrivner's doctor determined Bolton's multiple injuries rendered him physically unable to perform the required tasks of order selector.

Bolton argued his disability substantially limited his major life activity of working. "To demonstrate that an impairment 'substantially limits' the major life activity of working, an individual must show 'significant[ ] restrict[ion] in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills, and abilities.'" *Bolton,* 36 F.3d at 942 (quoting 29 C.F.R. § 1630.2(j)(3)(i)) (emphasis added). Furthermore, "the regulations specify that '[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working'". *Id.* The Court reviewed the record for evidence of the factors set forth in the ADA regulations to consider when determining whether an impairment substantially limits a major life activity. *Id.* at 943. The three factors that must be considered are:

(i)   [t]he nature and severity of the impairment;

(ii)   [t]he duration or expected duration of the impairment; and

(iii)   [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*Id.* (quoting 29 C.F.R. § 1630.2(j)(2)).

Three additional factors the Court may consider are:

(A)   [t]he geographical area to which the individual has reasonable access;

(B)   [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C)   [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(ii)).

The Court determined that Bolton's evidence failed to show he was restricted from performing a class of jobs. *Id.* at 944. In support of his claim that his impairment significantly restricted his ability to perform a class of jobs, Bolton produced the following medical evidence:

1) his limited ability to lift weight rendered him unfit to return to work as an order selector,

2) he could not do any work where he stood on concrete flooring and would need vocational rehabilitation training into a position where he didn't have to stand for prolonged periods,

3) he had limitations with standing, walking and lifting overhead, and

---

**1.** The ADA defines a disability in the same manner as the Rehabilitation Act of 1973, 29 U.S.C. § 706(8)(B). *See Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir.1993). This Court is guided by how this language has been construed under the Rehabilitation Act. *Bolton v. Scrivner, Inc.,* 836 F.Supp. 783, 787 (W.D.Okla.1993).

4) he was found temporarily totally disabled in both feet by the Oklahoma Workers' Compensation Court.

*Id.* at 943–44. The Tenth Circuit determined this evidence failed to show Bolton was restricted from performing a class of jobs. *Id.* at 944. The Court concluded the evidence did not "address Bolton's vocational training, the geographical area to which he had access or the number and type of jobs demanding similar training from which he would be disqualified." *Id.* The evidence merely addressed the nature, severity, duration and impact of Bolton's impairment. *Id.* Because he failed to show "a significant restriction in his 'ability to perform either a class of jobs or a broad range of jobs in various classes'", the Court affirmed the award of summary judgment to Scrivner. *Id.*

In the instant case, plaintiff argues her major life activities are substantially limited by her disability because she could not work at her selector's job nor could she care for her children without the assistance of her family. This evidence, however, only shows plaintiff is unable to work at her selector position without some accommodation. Taylor's inability to perform the specific job of selector does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i). Furthermore, plaintiff's argument that Albertson's management perceived her as having a disability does little to support her claim. *See Welsh v. City of Tulsa, Okla.*, 977 F.2d 1415, 1419 (10th Cir.1992) ("[A]n impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the [Rehabilitation] Act").

Plaintiff must produce evidence that her overall employment opportunities have been significantly restricted.

According to plaintiff's treating physician, Dr. Shea, she suffered from an impairment which limited her performing a classification of jobs which include repeated arm movements. In addition, plaintiff submitted a letter from the U.S. Postal Service finding her medically unsuitable for the job of letter carrier due to her injury caused by repetitive lifting.[2]

As in *Bolton*, Plaintiff's evidence fails to address any vocational training, the geographical area to which she has access, or the number and type of jobs demanding similar training from which plaintiff would also be disqualified. While plaintiff's evidence may go to the nature of her impairment, none of plaintiff's evidence even addresses the severity and/or duration of the impairment, two factors that must be considered by this Court.

Because Taylor has failed to offer specific evidence to show that there is a genuine dispute of a material fact regarding whether she is disabled under the ADA, an element for which plaintiff would bear the burden of proof at trial, defendant's motion is granted.

### CONCLUSION

Defendant Albertson's motion for summary judgment [Docket #23] is hereby **GRANTED.** Plaintiff's complaint and the parties' final pretrial order state this Court's jurisdiction is based upon 28 U.S.C. § 1331 and invoked the Court's authority and power to entertain her state pendant claims in this

---

**2.** Plaintiff submitted this letter as a supplement to her response to defendant's motion for summary judgment. The Postal Service found plaintiff medically unsuitable for the job of letter carrier due to her injury caused by repetitive lifting. The Court finds the letter does not comply with Fed.R.Civ.P. 56(e) in that it is not properly identified or authenticated by an appropriate affidavit. Furthermore, the letter, dated October 1, 1994, was sent to plaintiff by certified mail return receipt requested. However, in her application to supplement her response, plaintiff's counsel informed the Court he had only recently received the letter. If plaintiff did indeed receive the letter in October 1994 (conceivably before plaintiff's response to the motion for summary

judgment was filed on October 21, 1994), she failed to respond to defendant's request for production of documents and honor her continuing obligation to supplement that request. *See* Fed. R.Civ.P. 34; Rule 17(C), Local Court Rules of the Western District of Oklahoma.

However, even if the Court were to consider plaintiff's supplemental evidence, it would find the letter insufficient to prove plaintiff is significantly restricted from a class of jobs or broad range of jobs in various classes. The letter does little to show that plaintiff is restricted from performing a class of jobs. Plaintiff is simply restricted from a job that requires repetitive lifting similar to the selector position at Albertson's.

lawsuit. However, the Court, pursuant to 28 U.S.C. § 1367(c), declines to entertain jurisdiction over plaintiff's state law claims and they are hereby **DISMISSED WITHOUT PREJUDICE.** The Court expresses no opinion regarding the merit of plaintiff's state law claims.

**IT IS SO ORDERED.**