Eric E. AZUBUIKE, Appellant,

v.

FIESTA MART, INC., Appellee.

No. 14–96–01334–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 30, 1998.

Steven C. Meisgeir, Houston, for appellant.

John K. Linker, Jacob Montillijo Monty, David Leslie Barron, Houston, for appellees.

Before YATES, EDELMAN and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Appellant, Eric A. Azubuike, appeals from a summary judgment granted in favor of appellee, Fiesta Mart, Inc. ("Fiesta"), on his

negligence, workers' compensation and discrimination claims. In one point of error, Azubuike contends the trial court erred because genuine issues of material fact exist as to each of his causes of action and therefore Fiesta was not entitled to summary judgment as a matter of law. We affirm.

## I. Background

The summary judgment proof, viewed in the light most favorable to Azubuike, shows that on September 24, 1984, Fiesta employed Azubuike as a front end manager at one of its busiest stores. His duties included greeting and assisting customers, ensuring that the store's check out lanes ran smoothly, and generally coordinating the activities of the front section of the store. During 1994, Azubuike began experiencing problems with his back, legs, and right knee. He was examined by Dr. David Benavides, an orthopedic specialist, who prescribed medicine and daily physical therapy, and instructed Azubuike not to return to work for one week. Azubuike's sick leave began on Monday, December 5, 1994, and ended on Sunday, December 11th. Knowing that Sunday was the first day of Fiesta's new work week, Azubuike called on Saturday, December 10th, to inquire about his work schedule for the following week. The store's assistant manager informed Azubuike that he was scheduled to work Monday through Saturday, without his usual Wednesday off, because Sunday was considered his day off for that week. Azubuike contacted the store manager, Tom Skelley, and told him he needed a day off during the week to rest his back, legs, and knee. Skelley responded that Azubuike had to work the entire week as scheduled.

Azubuike reported to work on Monday and Tuesday as scheduled. On Monday, Azubuike asked Skelley about a day off to rest, and informed Skelley that his injury was work related and he intended to file a claim. Skelley again told Azubuike he could not take an additional day off that week. Azubuike contacted Skelley once again Tuesday evening to tell him he would be unable to work on Wednesday, and was told his failure to report to work might have consequences. Azubuike did not work his designated Wednesday shift, but did work on Thursday and Friday. Fiesta, citing insubordination, terminated Azubuike's employment on Friday.

Azubuike filed suit alleging his physical problems were caused by Fiesta's negligence and gross negligence and his termination was in violation of the Texas Commission on Human Rights Act ("TCHRA") and Tex. Lab. Code Ann. § 451 (Vernon 1996). Specifically, Azubuike claims Fiesta (1) denied him pay increases, promotions, transfers and ultimately fired him because of his race, color, national origin and/or disability, and (2) wrongfully terminated him in retaliation for the exercise of his rights under the Texas Workers' Compensation Act. The trial court granted Fiesta's motion for summary judgment covering all of Azubuike's claims, from which he now brings this appeal.

## II. Standard of Review

The standard for reviewing a grant of summary judgment is well-established. The movant has the burden to show that there exist no genuine issues of material fact and that he is entitled to summary judgment as a matter of law. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference must be indulged in his favor. See id. To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. See Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.1997).

In the present case, the trial court granted Fiesta's motion for summary judgment without stating the grounds for its ruling. When reviewing a summary judgment granted on general grounds, the appellate court considers whether any theories set forth in the motion will support the summary judgment. See State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993). We will affirm the summary judgment "if any of the grounds asserted in sup-

port of the motion are meritorious." *Id.; Jenicke v. City of Forest Hill,* 873 S.W.2d 776, 779 (Tex.App.—Fort Worth 1994, no writ).

### III. Discussion

#### A. Retaliatory Discharge

■ Azubuike contends genuine fact issues exist that preclude summary judgment as to his claim that he was wrongfully discharged by Fiesta in retaliation for exercising his rights under the Texas Workers' Compensation Act ("the Act"). *See* Tex. Lab. Code Ann. § 451.001 (Vernon 1996). Since this appeal was briefed and argued, the Texas Supreme Court has determined that section 451.001, which prohibits discrimination against an employee for filing a workers' compensation claim, applies "only to employees and employers who act under the Workers' Compensation Act," and does not apply to nonsubscribers. *See Texas Mexican Railway Company v. Bouchet,* 963 S.W.2d 52, 41 Tex. Sup.Ct. J. 383, 386 (Feb. 13, 1998). It is undisputed that Fiesta is not a subscriber under the Act. Accordingly, any alleged retaliation by Fiesta against Azubuike for filing a workers' compensation claim is not actionable under section 451 and summary judgment as to this claim was proper. *See id.*

#### B. Discrimination

Azubuike claims Fiesta wrongfully discriminated against him on the basis of disability, race, national origin, and in retaliation for his engagement in protected activities. We will evaluate each of these claims to determine the propriety of the trial court's summary judgment.

##### 1. Discrimination Based Upon Disability

■ The TCHRA prohibits discrimination against an employee based upon "disability," which is defined to mean "a mental or physical impairment that *substantially limits at least one major life activity* of that individual, a record of such an impairment, or being regarded as having such an impairment." Tex. Lab.Code Ann. § 21.002(6) (Vernon 1996) (emphasis added). Fiesta moved for summary judgment on Azubuike's disability discrimination claim on the ground that Azubuike's physical problems do not qualify as a "disability" as defined in the statute, and therefore he is not protected under the TCHRA as a matter of law. In determining whether Azubuike had a physical impairment that substantially limited at least one major life activity, we may look to the Americans with Disabilities Act ("ADA") and cases decided thereunder for guidance.[1] *See Elstner v. Southwestern Bell Tel. Co.,* 659 F.Supp. 1328, 1345 (S.D.Tex.1987).

■ Azubuike claims he is substantially limited in his performance of (1) any job involving bending and heavy lifting, (2) many day-to-day tasks around his house, (3) playing with or lifting his children, and (4) sexual relations with his wife. While Azubuike's alleged physical limitations may qualify as an impairment, which Fiesta does not dispute, an impairment alone does not rise to the level of a disability. *See Anderson v. Gus Mayer Boston Store,* 924 F.Supp. 763, 773 (E.D.Tex.1996). A disability as contemplated by the TCHRA "must be one which is generally perceived as severely limiting [plaintiff] in performing work-related functions in general." *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 318 (Tex.1987). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir.1995) (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1995); *Taylor v. Albertson's,* 886 F.Supp. 819, 822 (10th Cir.1996) (holding that a plaintiff's claim of disability discrimination must fail when there is no evidence showing an inability to perform a class of jobs or a broad range of jobs in various classes); *Bolton v. Scrivner,* 36 F.3d 939, 943 (10th Cir.1994); *Hutchinson v. UPS,* 883 F.Supp. 379, 395–96 (N.D.Iowa 1995) (holding that a plaintiff's inability to lift packages of seventy pounds or more did not

---

1. The TCHRA expressly provides for "the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 ['the ADA'] and its subsequent amendments." Tex. Lab.Code Ann. § 21.001(3) (Vernon 1996).

constitute a disability under the ADA because she was only disqualified from a narrow range of jobs involving unassisted lifting over seventy pounds)). An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or not substantially limiting one. *See Chandler,* 2 F.3d at 1392.

Azubuike failed to show that he was severely restricted in his ability to perform work-related functions in general. In fact, Azubuike admitted he was physically capable of performing other jobs at the Fiesta store:

Q: Mr. Azubuike, are you contending that there are no jobs at Fiesta Store No. 7 which you are physically capable of performing?

A: No.

Q: No, you are not contending that?

A: There are jobs I can do.

Specifically, Azubuike admitted he was capable of performing a wide range of jobs from supervisor to various management positions. Moreover, it is undisputed that Azubuike was able to work the day before and the day after the Wednesday he failed to report for work. We do not believe Azubuike's physical problems constituted such severe barriers to employment or other life functions as to rise to the level of a disability subject to protection under the TCHRA. *See Chevron Corp. v. Redmon,* 745 S.W.2d at 318. Consequently, summary judgment as to Azubuike's disability discrimination claim was proper.

### 2. *Discrimination Based Upon Race, Color or National Origin*

■ Azubuike alleges Fiesta denied him pay increases, promotions and transfers because of his race, color or national origin. These claims are based on Azubuike's allegation that he was criticized by the store manager for spending too much time with his black customers, who were referred to as "Nigerians." Azubuike claims "Fiesta's callus [sic] and discriminatory description of all blacks as 'Nigerians,' in a store that is overwhelmingly Hispanic, shows a discriminatory motive in the denial of [his] raises, promotions, and transfers."

■ To establish a prima facie case of employment discrimination, a plaintiff must show (1) he was a member of a protected class, (2) he suffered an adverse employment action, and (3) non-protected class employees were not treated similarly. *See Farrington v. Sysco Food Services, Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (citing *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for any allegedly unequal treatment. *See Farrington,* 865 S.W.2d at 251. *After the employer articulates legitimate, non-discriminatory reasons, the burden shifts back to the plaintiff to prove that the employer's articulated reasons are a mere pretext for unlawful discrimination.* See id. *Although the burden of production shifts, the burden of persuasion remains continuously with the plaintiff.* See id.

Assuming *arguendo* that Azubuike's allegations established a prima facie case of race, color or national origin discrimination, the burden then shifted to Fiesta to prove a legitimate, non-discriminatory reason for the alleged unequal treatment. According to Fiesta's summary judgment proof, Azubuike was terminated for insubordination in failing to report to work as scheduled. The burden of production then shifted back to Azubuike to show that Fiesta's articulated reason was a pretext for race discrimination. Azubuike offered no summary judgment proof to show that Fiesta's reason was pretextual other than his manager's admonition nearly two months before he was terminated that he needed "to work harder, talk and socialize less with your Nigerian friends, be a team player, then we'll talk about this [pay raise, promotion, possible transfer]." The record is devoid of any evidence showing he was paid less or treated differently when it came to transfers or promotions than other employees. Nor was there any proof that other front end managers had failed to report to work as scheduled and were treated any differently. A subjective belief alone is insufficient to support a cause of action for discrimination. *See id.* Azubuike offered

no summary judgment proof to show that the reason given for his termination was pretextual. Consequently, summary judgment was proper as to Azubuike's claim of race, color or national origin discrimination under the TCHRA.

### 3. Retaliation for Protected Activities

■ Azubuike claims his employment was terminated in retaliation for two letters he wrote to management complaining of Fiesta's discriminatory treatment, in violation of TEX. LAB.CODE ANN. § 21.055 (Vernon 1996). The letters written by Azubuike outline various complaints, but do not mention discrimination or even identify Azubuike's race, color or national origin. Nevertheless, he claims "a jury could easily infer that Mr. Azubuike was aware of the severity of his charge and did not mention the discrimination to make his complaints more palatable to management." According to Azubuike, a genuine issue of material fact exists on his retaliation claim.

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. See Jones v. Flagship Int'l, 793 F.2d 714, 724 (5th Cir. 1986).[2] Even if we were to assume, as Azubuike claims, that the letters put management on notice of his discrimination complaints, Azubuike failed to show that they were the cause of or motivated his termination. The letters were written on November 10, 1989, and May 14, 1992. Azubuike's employment was not terminated until December 16, 1994, five years after the first letter and more than two and one-half years after the second. Such a lapse of time, with nothing more, is too long to establish that there was a causal connection between the letters and Fiesta's decision to terminate his employment. See generally Grizzle v. Travelers Health Network, 14 F.3d 261, 268 (5th Cir.1994) (holding lapse of ten months between plaintiff's discrimination complaint and

termination did not support inference of retaliation); EEOC v. MCI Telecommunications Corp., 820 F.Supp. 300, 310 (S.D.Tex. 1993) (holding employer's alleged discriminatory comment six months before plaintiff's discharge was not close in time and not causally linked to her discharge).

Moreover, we do not believe the content of Azubuike's letters would support an inference that he was engaging in a protected activity, i.e. complaining of discrimination, particularly where Azubuike's race, color or national origin are not even identified in the letters. A vague charge of discrimination will not invoke protection under the statute. See Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1313 (6th Cir.1989) (holding vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice). In Ulrich v. Exxon Co. U.S.A., 824 F.Supp. 677 (S.D.Tex.1993), the court determined that a twenty-seven page document setting forth an employee's complaints, which made no reference to racial discrimination, confirmed that race was not in fact an issue. See id. at 685. In the present case, Azubuike failed to show that he engaged in protected activity or that there was a causal link between such alleged activity and his termination. Therefore, summary judgment was proper as to Azubuike's retaliatory discharge claim.

### C. Negligence

■ Azubuike next claims there is a fact question regarding whether Fiesta's negligence or gross negligence caused him injury. To establish negligence, a plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. See Werner v. Colwell, 909 S.W.2d 866, 869 (Tex.1995). Although an employer is not an insurer of his employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place. See id. Azubuike claims the injury to his back, legs and knee was

---

**2.** As stated previously, since the TCHRA embodies Title VII, there is a correlation of state law with federal law in the area of employment discrimination. Thus, we may look to federal case law interpreting Title VII when determining the burdens of proof under the TCHRA. See Schroeder, 813 S.W.2d at 485.

caused by Fiesta's negligence or gross negligence in failing to provide him a safe place to work. Specifically, Azubuike claims his job required him "to stand long hours, walk, bend, and lift," and Fiesta did not provide him with proper safety equipment such as a weightlifter's belt or other form of back support.

In his affidavit, Azubuike states he was told by Dr. Benavides that his injury "was caused or aggravated by long hours of standing or lifting at Fiesta." In his report, Dr. Benavides states he could not "speculate as to the exact etiology of his symptoms but in all reasonable medical probability, Mr. Azubuike's current medical condition was aggravated by the performance within the nature and scope of his job tasks." The record reveals that Azubuike worked for Fiesta over ten years doing the same tasks. In his deposition, Azubuike admitted (1) he did nothing out of the ordinary which may have caused his conditions, (2) he could not identify one particular incident that may have caused his injuries, and (3) he was performing the usual and customary duties that other front-end managers performed. The Texas Supreme Court has held that there is no negligence when an employee is doing the same character of work that he has always done and that other employees in other stores are required to do. *See id.* at 869; *Great Atlantic & Pacific Tea Co. v. Evans,* 142 Tex. 1, 175 S.W.2d 249, 251 (1943). Specifically, when there is no evidence that job-related lifting is unusual or poses a threat of injury, a plaintiff has failed to establish a prima facie case. *See Werner,* 909 S.W.2d at 869. Azubuike presented no summary judgment proof to establish that his job-related lifting was unusual or posed a threat of injury. Consequently, the trial court did not err in granting summary judgment as to Azubuike's negligence and gross negligence claims.

Azubuike's sole point of error is overruled.

## IV. Fiesta's Cross–Point

Fiesta brings one cross-point of error requesting that sanctions be awarded against Azubuike for filing a frivolous appeal. Specifically, Fiesta seeks an award of taxable costs of appeal pursuant to TEX.R.APP. P. 45 (formerly TEX.R.APP. P. 84). Rule 45 allows this court to award a prevailing party just damages if we determine an appeal is frivolous. Although the granting of sanctions is within our discretion, a sanction should be applied only with prudence, caution, and after careful deliberation. *See Tate v. E.I. Du Pont de Nemours & Co., Inc.,* 954 S.W.2d 872, 875 (Tex.App.—Houston [14th Dist.] 1997, no writ). In determining the propriety of sanctions, we must view the record from the appellant's point of view at the time the appeal was filed. *See City of Alamo v. Holton,* 934 S.W.2d 833, 837 (Tex.App.—Corpus Christi 1996, no writ). Moreover, we must focus on whether appellant had a reasonable expectation of reversal or whether he merely pursued the appeal in bad faith. *See Tate,* 954 S.W.2d at 875. Our review of the record and the issues presented does not show that the appeal in this case was taken without sufficient cause and for the purpose of delay. Accordingly, we deny the request for sanctions and overrule Fiesta's cross-point.

The judgment of the trial court is affirmed.