Vincent THOMAS, Appellant,

v.

CLAYTON WILLIAMS ENERGY, INC., Tom Fetford, Pete Saldana & Charles McCauley, Appellees.

No. 14–98–00583–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 23, 1999.

Conrell Brown, Houston, for appellants.

Christopher H. Hahn, Austin, Michael J. Simmang, Giddings, Christopher A. Knepp, Austin, for appellees.

Panel consists of Justices YATES, FOWLER and SONDOCK.*

## OPINION

LESLIE BROCK YATES, Justice.

Vincent Thomas, appellant, appeals a summary judgment granted in favor of Clayton Williams Energy, Inc., *et al.* ("CWEI"), appellees, in his discrimination and retaliation action. CWEI is an oil company active in exploring and drilling for oil and gas. Thomas, one of CWEI's two African–American employees, worked for CWEI as a "roustabout," an outdoor manual laborer, from January 1993 to June 1995. Thomas alleges that beginning in the spring of 1993, CWEI supervisors initiated a campaign of racial harassment and discrimination against him, which caused him to suffer severe stress. Ac-

* Senior Justice Ruby K. Sondock sitting by assignment.

cording to Thomas, as a consequence, he was diagnosed with clinical depression and remained under medical care for two years.

In June 1995, Thomas sought paid time off from work. Thomas was informed that because of his prior absences, he had no available time off, and CWEI denied his request. Thomas thereafter left work and did not return. In response to CWEI's inquiry regarding Thomas's reason for leaving, Thomas offered a note from his physician indicating that he was suffering from stress and advising that Thomas should not return to work. Subsequently, CWEI asked Thomas to provide a definite date for his return to work; Thomas was unable to comply, and CWEI terminated his employment.

On January 22, 1996, Thomas sued CWEI for, *inter alia,* race discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"), and intentional infliction of emotional distress. The trial court granted summary judgment on CWEI's motion, ordering that Thomas take nothing by his claims and dismissing the suit with prejudice. In six points of error, Thomas contends that the trial court erred in granting CWEI's motion for summary judgment because Thomas has exhausted all his administrative remedies and established a prima facie case of racial discrimination, intentional infliction of emotional distress, and retaliation. Moreover, Thomas asserts that the trial court erred in applying the wrong standard of review in granting summary judgment in favor of CWEI. We affirm the summary judgment in part and reverse and remand in part.

## STANDARD OF REVIEW [1]

In seeking summary judgment, a movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, the trial court must take evidence favorable to the non-movant as true. *See id.* Furthermore, the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in the non-movant's favor. *See id.*

When a defendant seeks to obtain summary judgment based on a plaintiff's inability to prove its case, the defendant must conclusively disprove at least one element of each of the plaintiff's causes of action. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). Only if a defendant disproves one of the essential elements of one of the plaintiff's causes of action does the plaintiff carry the burden of producing controverting evidence and raising a fact issue as to the negated element. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). When a trial court does not state the basis for its decision in its summary judgment order, we must uphold the order if any of the theories advanced in the motion are meritorious. *See Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989). Conversely, we must reverse the order if we find no valid legal basis in the motion. *See id.*

---

**1.** In its brief, CWEI asserts that our review should be governed by the "no evidence" standard because its motion for summary judgment was brought under Tex.R. Civ. P. 166a(i). However, after reviewing the record, it is unclear whether CWEI moved for summary judgment under rule 166a(b) or rule 166a(i). As a result, CWEI failed to give Thomas "fair notice" that it was moving for summary judgment under rule 166a(i). *See Roth v. FFP Operating Partners,* 994 S.W.2d 190, 194 (Tex.App.—Amarillo 1999, no pet.). In any event, our disposition of Thomas's points of error would be the same under the no evidence summary judgment standard of review.

## DISCRIMINATION AND RETALIATION

In points of error one and four, Thomas contends that the trial court erred in granting CWEI's motion for summary judgment because he proffered summary judgment evidence that raised material fact issues regarding CWEI's racially discriminatory conduct and retaliation, which violated TEX. LAB.CODE ANN. § 21.001 *et seq.* (Vernon 1996). In his related second point of error, Thomas asserts that he exhausted all his administrative remedies and is, thus, entitled to bring a civil suit against CWEI.

### A. Administrative Remedies

■ In its motion for summary judgment, CWEI argued that Thomas failed to exhaust his administrative remedies with respect to Thomas's retaliatory discharge claim. Specifically, CWEI complained that Thomas's claim regarding his retaliatory discharge was barred under section 21.201(a) of the Labor Code.[2]

■ Section 21.201(a) of the Labor Code provides that before a complainant may maintain a suit for employment discrimination, he must file a complaint with the Texas Commission on Human Rights ("TCHR"). *See* TEX. LAB.CODE ANN. § 21.201(a) (Vernon 1996); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 488 (Tex.1991). A lawsuit under this section is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge. *See Fine v. GAF Chem. Corp.* 995 F.2d 576, 578 (5 th Cir.1993).

Thomas filed a complaint with the TCHR and the EEOC on November 14, 1994, alleging that because of his race CWEI denied him an opportunity to try out for a "pusher" position and subjected

him to more disciplinary actions than other similarly situated white employees. In his suit against CWEI, Thomas restated these allegations and further alleged that after he filed his EEOC/TCHR complaint, CWEI increased its racial harassment and "[set] him up for termination." However, Thomas did not file a separate EEOC/TCHR charge complaining of CWEI's retaliation. Consequently, CWEI contends that Thomas failed to exhaust his administrative remedies under section 21.201.

In *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5 th Cir.1981), the plaintiff filed an EEOC charge alleging national origin and religious discrimination. In the suit, the plaintiff claimed that after he filed a complaint with the EEOC, his employer retaliated against him. *See id.* at 413. However, the plaintiff did not file an additional EEOC charge alleging retaliation. *See id.* Nonetheless, the court held that it was not necessary to file a charge for a retaliation claim when that claim grew out of a previously filed EEOC charge. *See id.* at 414. Thus, because Thomas's retaliation claim arose due to his filing a complaint with the EEOC and TCHR, it was not necessary for Thomas to file a second complaint. As a result, Thomas exhausted his administrative remedies, and the court erred in granting summary judgment on this ground.

### B. Racial Discrimination

■ In his first point of error, Thomas contends that the trial court erred in granting CWEI's summary judgment because he established a prima facie case of racial discrimination. In his EEOC complaint, Thomas alleged that CWEI gave him written disciplinary notices and denied him the opportunity to try out for a "pusher" position because of his race.

---

**2.** In its brief, CWEI further asserts that Thomas failed to exhaust his administrative remedies with respect to his claim for race discrimination based on CWEI's failure to promote him to a "pumper" position. However, Thomas did not make that allegation in his pleadings. Therefore, CWEI's contentions with regard to this issue are moot.

To establish a prima facie case of employment discrimination, a plaintiff must show (1) he was a member of a protected class, (2) he suffered an adverse employment action, and (3) non-protected class employees were not treated similarly. *See Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60, 64 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for any allegedly unequal treatment. *See id.* After the employer articulates legitimate, non-discriminatory reasons, the burden shifts back to the plaintiff to prove that the employer's articulated reasons are a mere pretext for unlawful discrimination. *See id.* Although the burden of production shifts, the burden of persuasion remains continuously with the plaintiff. *See id.*

Assuming *arguendo* that Thomas's allegations established a prima facie case of race discrimination, the burden then shifted to CWEI to prove a legitimate, non-discriminatory reason for the alleged unequal treatment. According to CWEI's summary judgment proof, Thomas was disciplined for his "absenteeism and tardiness." CWEI further stated that it denied Thomas promotional opportunities, in particular, it prohibited Thomas from trying out for a "pusher" position, because Thomas lacked the experience required for the position. The burden of production then shifted back to Thomas to show that CWEI's articulated reason was a pretext for racial discrimination. Thomas offered the affidavit of Philip Rosprim, a crew supervisor for CWEI. Rosprim stated his and Thomas's supervisor asked Rosprim to find fault with Thomas's work and asked him to "write-up Mr. Thomas for the few times that he was late, but . . . did not ask [him] to write-up employees who were late a lot more often than Mr. Thomas." Rosprim then stated that, "White employees were treated more favorably than black employees. Whites were written up less frequently than blacks. None of the

blacks were promoted. White employees were allowed to work more overtime than blacks." This evidence suggests that CWEI's race-neutral reasons were a pretext for unlawful discrimination. Thus, the trial court improperly granted summary judgment on Thomas' claim of racial discrimination.

## C. Retaliation

Thomas also alleged that after he filed his complaint with the EEOC and TCHR, CWEI retaliated against him by "increasing the daily dosage of racial slurs and jokes, setting [Thomas] up for termination, and denying [Thomas] job advancement opportunities that were offered to similarly situated non-black employees."

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *See Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986). The burden then shifts to the employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Upon the employer's articulation of a legitimate, nondiscriminatory reason, the presumption raised by the prima facie case is rebutted. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). At this point the plaintiff carries the burden of proving that the employer's proffered reason is a pretext for discriminatory conduct. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. A plaintiff meets this burden when he either directly persuades the trier of fact that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of

credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

Thomas alleges that after he filed his EEOC discrimination complaint, CWEI increased the racial harassment, denied him promotional opportunities, and terminated his employment. CWEI, however, presented summary judgment evidence showing that Thomas could not establish a causal connection between his protected activity and any adverse employment action. In particular, CWEI offered Thomas's deposition testimony, in which Thomas admitted that he was discharged because he was unable to produce a definite return date from his injury. However, in response, Thomas asserted that there was a causal connection and offered Rosprim's affidavit as proof. Specifically, Thomas relied on Rosprim's statements that "None of the Black employees were promoted" and that he, Rosprim, was instructed by his supervisor to write Thomas up for being late, but was not asked to do the same with tardy white employees. Although Rosprim's statements may constitute some evidence of CWEI's racial discrimination, it does not establish an affirmative connection between Thomas's discrimination claim and the alleged adverse employment action. Rosprim neither states that Thomas was denied job advancement opportunities after filing the complaint, nor does he explain that he was instructed to discipline Thomas more frequently after Thomas filed his EEOC charge. Thus, even if we indulge all reasonable inferences in Thomas's favor, Rosprim's affidavit fails to prove that CWEI's non-discriminatory reason was pretextual. Consequently, the court properly granted summary judgment on Thomas' retaliation claim.

### D. Conclusion

In summary, CWEI moved for summary judgment on Thomas's race discrimination and retaliation claims on a number of grounds. To the extent that the trial court granted summary judgment on CWEI's allegations regarding Thomas's failure to exhaust his administrative remedies, and Thomas's failure to raise genuine issues of material fact with respect to his race discrimination claims, we conclude that the trial court improperly granted summary judgment. As a result, we sustain Thomas's first two points of error.

However, with respect to Thomas's retaliation claims, we conclude that Thomas did not meet his burden of proving that CWEI engaged in intentionally discriminatory conduct. Accordingly, we overrule Thomas's fourth point of error.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

▇▇▇ In his third point of error, Thomas contends that the trial court erred in granting CWEI's motion for summary judgment because he established a prima facie case of intentional infliction of emotional distress. Thomas asserts that he was subjected to a constant barrage of racial slurs, jokes, insults and harassment from CWEI supervisors and employees, and complains that CWEI passed him over for promotional opportunities. According to Thomas, CWEI's conduct was intentional, extreme, and outrageous, and caused him to suffer clinical depression.

▇▇▇ In order to prevail on a claim for intentional infliction of emotional distress, the complainant must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's actions caused the plaintiff severe emotional distress. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is initially a question of law. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Outrageous conduct is that which goes beyond all possible bounds of decency, is atrocious, and utterly intolerable in a civilized society. *See id.*

There is summary judgment evidence that CWEI's employee Tom Fetford, Thomas's supervisor, frequently used racial epithets against Thomas and in referring to Thomas. However, liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *See Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 367 (Tex.App.—San Antonio 1992, writ denied). Even conduct which may be illegal in an employment context may not be the sort of conduct constituting extreme and outrageous conduct. *See id.* Courts have held that Fetford's conduct, although condemnable, does not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. *See Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993) (holding that the supervisor's reference to the plaintiff as a "Mexican" and a "wetback" did not support a claim for intentional infliction of emotional distress); *McCray v. DPC, Indus., Inc.*, 875 F.Supp. 384, 391 (E.D.Tex.1995) (holding that the plaintiff's claim that co-workers made racial slurs and jokes did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress). Consequently, the trial court did not err in granting CWEI's motion for summary judgment, and we overrule Thomas's third point of error.[3]

### CONCLUSION

To the extent that the trial court granted summary judgment on CWEI's allegations regarding Thomas's failure to exhaust his administrative remedies, and Thomas's failure to raise genuine issues of material fact with respect to his race discrimination claims, we conclude that the trial court improperly granted summary judgment. Accordingly, we reverse the summary judgment and remand for a trial on Thomas's race discrimination claims.

We affirm the summary judgment on the remaining grounds.

---

3. Due to our disposition of Thomas's appeal, we overrule his fifth and sixth points of error regarding the trial court's error misapplying the summary judgment standard of review.