Richard HARTIS, Appellant,

v.

MASON & HANGER CORPORATION,
dba Mason & Hanger–silas Mason
Company, Inc., Appellee.

No. 07–99–0065–CV.

Court of Appeals of Texas,
Amarillo.

Nov. 4, 1999.

John E. Wall, Dallas, for appellant.

Mark D. White, Sprouse, Smith & Rowley, Lee Ann Reno, Amarillo, for appellee.

Before BOYD, C.J., QUINN and REAVIS, JJ.

BRIAN QUINN, Justice.

Richard Hartis (Hartis) appeals from a summary judgment granted in favor of his ex-employer Mason & Hanger Corporation (Mason). Hartis sued Mason, alleging that the latter discriminated against him because of his age and purported disability. Three issues are asserted on appeal. All question the validity of the summary judgment. We affirm.

### Background

Mason fired Hartis on April 4, 1996. The reason given for its doing so was his prior misconduct on the job. The alleged misconduct occurred before Hartis commenced a five month paid leave of absence. During this absence, Hartis was apparently seen by Dr. James Hale, who eventually executed a document purportedly enabling Hartis to return to work. On that document numbered "PX53B" and under the category "Recommendations," Hale suggested that Hartis "continue follow up" with his counselor, psychiatrist, and Hale "regularly." [1] However, Hale also indicated that Hartis was subject to "no work restrictions." Moreover, under the category "Diagnosis," Hale said nothing about any physical or mental ailment which Hartis was allegedly suffering.

When Hartis returned to work, he underwent questioning by various Mason employees. The subject of the questioning involved an incident of misconduct with another employee. While the questioning was occurring, Hartis "broke down" and began informing them of his personal problems. The interrogators then decided that they "could not continue with the questions." So, they sent him to the company's doctor who directed Hartis to obtain a statement from a psychiatrist and counselor (whom he had apparently been seeing) concerning his ability to work. Both completed "PX53B" forms which were delivered to Mason. According to the form executed by the psychiatrist, Hartis suffered from "major [job related] depression." However, the doctor noted that his patient had improved and was subject to "no work restrictions." Similarly, the counselor wrote that Hartis had suffered from a single episode of major depression but had improved. Under the category "Recommendations" she also stated that he "appear[ed] able to follow [a] regular work routine" and was subject to "no work restrictions."

1. Incidentally, under the category "Recommendations," the physician was specifically asked to address whether Hartis was subject to any physical and mental limitations.

After providing the foregoing documentation to Mason, Hartis again appeared for work. By that time, however, the decision had been made to terminate him and he was fired. The reason given him for his termination was his "[c]ontinuing misconduct involving abuse and—verbal abuse and harassment of other employees."

### Standard of Review

Mason sought summary judgment on several grounds. Through the first it alleged that Hartis could not "prove a *prima facie* case [*viz* his disability claim] because [he] never told Mason ... of a disability and never requested an accommodation." Next, it asserted that judgment was appropriate upon his "age claim" because the individual who replaced Hartis was "not significantly younger than Hartis and the two were not similarly situated." Finally, Mason averred that there was "no evidence" that 1) Hartis "had a disability before he was terminated," 2) any disability "was a motivating factor in the decision to terminate" him, and 3) "age was a motivating factor...." In the summary judgment that it eventually entered, the trial court alluded to no specific reason for granting the relief, it merely granted the motion and ordered that Hartis "take nothing against" Mason.

Given the foregoing circumstances, the standard of review is as follows. As to the grounds concerning lack of notice, request for accommodation, no significant difference in age, and the dissimilarity between Hartis and his replacement, the burden lay with Mason to establish each as a matter of law. Tex.R. Civ. P. 166a(c). In other words, no evidence of record, when construed in a manner most favorable to Hartis, may depict the existence of a material issue of fact. Should it, then Mason is not entitled to judgment on that particular ground.

■ As to the "no evidence" grounds, Mason need not have proved its entitlement to judgment as a matter of law. Rather, the burden lay with Hartis to tender probative evidence sufficient to raise a genuine fact issue on the particular matter. *See* Tex.R. Civ. P. 166a (Notes and Comments). In other words, we must peruse the record to determine whether it contains more than a scintilla of evidence showing that Hartis was disabled and that his disability and age motivated the decision to fire him. *See Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.) (concluding that the standard of review applicable to a no evidence summary judgment was akin to that used in reviewing a directed verdict). Such a quantum of evidence exists when it "enables reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

■ Finally, because the trial court did not specify the grounds upon which it relied, its judgment will be affirmed if any of the grounds in the motion are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). Thus, it is incumbent upon Hartis to address, on appeal, each ground which could have possibly negated his causes of action.

### Application of Standard

*a. Disability Claim*

■ The claim sounding in disability arose under the Texas Commission on Human Rights Act (TCHRA), Tex. Labor Code Ann. § 21.001 *et. seq.* (Vernon 1996) and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.* Among other things, each prohibits an employer from discharging or otherwise discriminating against an employee because of a disability. Tex. Labor Code Ann. § 21.051(a); 42 U.S.C. § 12112(a). Furthermore, the definition of "disability" under both statutes is virtually identical. Both define it as 1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, 2) a record of such an impair-

ment, or 3) being regarded as having such an impairment. TEX. LABOR CODE ANN. § 21.002(6) (Vernon's Supp.1999); 42 U.S.C. § 12102(2); *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60, 63 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Neither statute, however, defines what is meant by "substantially limits" or "major life activity." Nevertheless, other authority helps to fill the void. For instance, a "major life activity" is considered to be something akin to " 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.' " *Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. 37, 47 (D.Maine 1996), *aff'd,* 105 F.3d 12 (1st Cir.1997), (*quoting,* 29 C.F.R. § 1630.2(i)); *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d at 63–64 (indicating that working is a major life activity).[2] Furthermore, this authority indicates that when the activity is "working," the individual's impairment substantially limits the activity when the impairment severely restricts or forecloses his ability to work *in general.* 29 C.F.R. § 1630.2(j)(3)(i); *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 318 (Tex.1987); *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d at 63–64; *Chandler v. City of Dallas,* 2 F.3d 1385, 1391–93 (5th Cir. 1993), *cert. denied* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (and authorities cited therein); *Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. at 49 (emphasis added). That is, it is not enough that he cannot perform a single or particular job or a narrow range of jobs. *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d at 63–64; *Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. at 49.

■ Additionally, when proving disability through either the second or third prong of the definition (*i.e.* "a record of such an impairment" or "being regarded as having such an impairment"), more is required than merely showing that one has a mental or physical impairment. Rather, the phrase "such an impairment" incorpo-

rates both the impairment *and* its debilitating nature. *Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. at 51 (emphasis added). Given this, one proves he is disabled by either establishing 1) that he suffers from a physical or mental impairment and that the impairment substantially limits at least one major life activity, 2) that he has a record of a mental or physical impairment which so limits a major life activity, or 3) that he is regarded as having a mental or physical impairment that so limits a major life activity. *Id.; See Chandler v. City of Dallas,* 2 F.3d at 1391–1393 (discussing how the employer must perceive that the employee's impairment substantially limits his ability to work).

At bar, Hartis believed that he was disabled because he 1) suffered from depression which prevented him from working, 2) had a record of suffering from depression which prevented him from working, and 3) was perceived as suffering from depression that prevented him from working. Thus, we analyze the summary judgment with those particular claims in mind, and, in doing so, first address the no evidence ground.

■ Chronic depression has been held to be a mental impairment under the ADA. *Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. at 47; *Stradley v. Lafourche Comm. Inc.,* 869 F.Supp. 442, 443 (E.D.La. 1994). And, as indicated above, working is a major life activity. 29 C.F.R. § 1630.2(i) (1995). So, given Mason's assertion of no evidence of a disability, Hartis was obligated to provide some evidence sufficient to raise a question of fact at least as to one of his claims. And, he attempted to do so via his own affidavit, responses to discovery, and excerpts from an arbitration hearing.

Of those three sources, however, only his affidavit addressed the matter of depression. And, through it, he endeavored to relate various diagnoses uttered by the medical professionals who treated him.

---

**2.** Given the similarity between the TCHRA and the ADA, federal authority interpreting the latter is useful in construing the former.

*Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60 (Tex.App.—Houston [14th dist.] 1998, no pet.).

Yet, Mason objected to this information as well as other portions of the document. The objections were sustained, and, more importantly, Hartis did not complain on appeal of the court's decision to sustain them. Thus, nothing in his appellate brief about 1) his supposed "nervous breakdown," 2) his being told by medical professionals not to work or that he could not work, 3) his being told that he suffered from "chronic" depression, and 4) his reason for being absent from work for months enjoys evidentiary support. Again, this is so because the information allegedly providing that support was excluded.

Consequently, the only medical evidence regarding Hartis's depression and its affect appears in the "PX53B" forms executed by his medical professionals. Two of those individuals opined that he experienced "major" depression, while another suggested that he should continue with counseling. Yet, each determined that Hartis was subject to "no work restrictions" after being expressly directed to consider his mental status in making their decision. Indeed, the counselor specifically stated that Hartis "appear[ed] able to follow a *regular* work routine." (emphasis added).[3] This being the nature of the record before us, we are unable to say that any evidence exists which would enable reasonable and fair-minded jurors to differ in their conclusion about whether Hartis's depression prevented him from working or severely impeded his ability to work in general.

Nor do we have before us evidence suggesting that Hartis had a "record of such an impairment" or was perceived by Mason as having same. Logically, if nothing illustrates that he ever had a mental impairment precluding or severely impeding him from working in general, then it cannot be said that there existed a "record" of such an impairment.

■ Additionally, none of the summary judgment evidence accepted by the court depicted why Hartis was on an extended leave of absence or that his supposed mental condition mandated that absence. Admittedly, one could reasonably infer from the record that Mason knew Hartis was on a leave of absence. Yet, it is undisputed that prior to going on leave, Hartis neither believed himself disabled nor suggested to Mason that he was. Equally undisputed is that Mason did not communicate with Hartis during his absence. So, it does not reasonably follow from the inference that the company knew he was on leave that it also knew 1) of his supposed depression, or 2) that said depression prevented him from working.[4] And, though it garnered information about the depression after he returned to work, nothing of record remotely suggests that Mason believed that the ailment prevented him from working in general. Consequently, no evidence supports the assertion that Mason perceived Hartis to be suffering from an impairment substantially limiting a major life activity.

In sum, Hartis failed to present evidence satisfying either of the three categories of

---

**3.** Hartis would have us read the "PX53B" form completed by Dr. Hale as stating that his ability to return to work was conditioned upon his continuing treatment with a counselor, a psychiatrist, and Hale. In other words, he wants us to infer that his depression prohibited him from returning to work unless he continued treatment. While a non-movant is entitled to the benefit of reasonable inferences from the evidence, we are unable to say that the inference he wants us to make is reasonable. This is so because nothing in the form so conditions Hartis's return to work. Nothing therein says that he cannot work because of his depression or that he can work only if he continues with treatment. Indeed, nothing in that particular document even says that he

was suffering from depression. Rather, Hale expressly opined that Hartis was under "no work restrictions." In sum, and as a matter of law, one cannot reasonably infer from a document that says nothing about depression or work restrictions that Hartis suffered from depression which limited his ability to work.

**4.** Nor can one reasonably infer that Mason perceived him to be disabled by its decision to postpone further interrogation of Hartis and send him to the company doctor. His conduct at most suggested that he could not undergo questioning at the time, not that his mental condition precluded him from working in general.

disability. Because he did, Mason was entitled to summary judgment on the disability claim, and the trial court did not err in granting it.[5]

### b. Age Claim

Like disability, it is generally illegal to use age as a basis for discriminating against an employee. Tex. Labor Code Ann. § 21.051(a). Furthermore, a violation of this statute may be established via direct or circumstantial evidence. Historically, when a complainant invoked the latter means to prove his termination from employment was unlawful, he often did so by comparing his treatment to that of a younger person. This was usually done via the four-pronged test first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). According to that opinion, one could generally establish a *prima facie* case of discrimination by showing that he was 1) discharged, 2) qualified for the job, 3) within the protected class (age 40 and older) at the time of discharge, and 4) replaced by someone outside the protected class, or by someone younger, or otherwise discharged because of his age. *McDonnell Douglas*, 411 U.S. at 802–803, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678; *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex.App.—Corpus Christi 1995, writ denied). Of late, however, our judicial brethren have somewhat modified the *test of McDonnell Douglas* and its progeny. When age discrimination is being shown circumstantially via comparison of the complainant's age with that of another, they now require that the age difference be significant. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312–13, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433, 438 (1996); *Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1028–29 (7th Cir.1998); *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1412–13 (8th Cir.1997). They came to this conclusion because in their view there needed to be a logical connection between the difference in age and the illegal discrimination supposedly indicated by that difference. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. at 312–13, 116 S.Ct. at 1310, 134 L.Ed.2d at 438. Furthermore, merely showing that one was replaced by a younger person did not do so. This was so, for example, because under the old standard, the replacement simply could have been a day younger, and a day younger truly said nothing about an employer's intent to use age as a motivating factor in its decision. Thus, common sense led to the conclusion that the disparity in age had to be significant.

■ We agree with the logic exemplified in *O'Connor*. And, given that it dealt with the federal equivalent to section 21.051 of the Texas Labor Code, we too hold that when one attempts to establish a *prima facie* case of age discrimination under section 21.051 by comparing his treatment with that of a younger individual, the difference in age between the two must be significant.

■ As depicted by his appellate brief, Hartis sought to prove his claim of age discrimination by comparing his treatment with that received by a younger man. However, Mason presented undisputed evidence that Hartis was merely three years older than the individual with whom he compared himself, the former being 49 and the latter, 46. Since a disparity of five years has been held insignificant, *Schiltz v. Burlington Northern R.R.*, 115 F.3d at 1407, as has a difference of seven years, *Richter v. Hook–SupeRx, Inc.*, 142 F.3d at 1029, we hold as a matter of law that the three year difference at bar is also insignificant. Thus, the trial court's summary judgment upon Hartis's claim of age discrimination is supportable on that ground.

Accordingly, the final summary judgment entered below is affirmed.

---

5. Our decision relieves us from having to address the other summary judgment grounds alleged by Mason as barring recovery upon the disability claim.