UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1366

BARBARA J. COMBS-BURGE,

Plaintiff - Appellant,

versus

DONALD H. RUMSFELD, Secretary of Defense,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CA-04-305-3)

Argued: January 31, 2006                Decided: March 20, 2006

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Joseph Davis Gebhardt, GEBHARDT & ASSOCIATES, L.L.P., Washington, D.C., for Appellant. Tara Louise Casey, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Charles W. Day, Jr., GEBHARDT & ASSOCIATES, L.L.P., Washington, D.C., for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Barbara Combs-Burge appeals the district court's grant of summary judgment to the Secretary of Defense (Secretary) on her claims of a racially hostile work environment, demotion based on her race, and retaliatory demotion at the Defense Logistics Agency's Defense Supply Center Richmond (DSCR) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-16 (West 2003). We agree with the district court that Combs-Burge cannot show that she was subject to a hostile work environment, and we also agree that she has not shown that the DSCR's legitimate, non-discriminatory and non-retaliatory reason for her demotion was false or a pretext for discrimination or retaliation. We therefore affirm.

I.

Combs-Burge, an African-American female, has been a federal employee for more than twenty years. From July 1999 until her demotion in June 2002, she was a Lead and Supervisory Inventory Management Specialist (IMS)[1] in DSCR's Product Center 1, which was responsible for maintaining the supply inventory for certain military helicopters.[2] She transferred to the DSCR from her job as

---

[1]Combs-Burge was initially hired as a Lead IMS, but in April 2001, the DSCR changed all Lead IMS positions to Supervisory IMS.

[2]The DSCR supports the U.S. military services by managing the supply of parts and materials for military aviation.

an Acquisitions Logistics Manager for the Department of the Navy in Philadelphia, Pennsylvania. Before and after her transfer, Combs-Burge was in the GS-12 pay grade. At the time of her transfer, she did not have experience as an inventory manager, but she alleges that the hiring official assured her that she would receive the necessary training.

As a Lead IMS, Combs-Burge was responsible for supervising twelve employees as well as performing inventory management tasks herself. To perform those tasks, she was required to use the Standard Automated Material Management System (SAMMS), a system with which she had no experience prior to her employment with the DSCR.

The crux of Combs-Burge's complaint is that she was subjected to a racially hostile work environment and was demoted because of discrimination on the basis of race and retaliation by her immediate supervisor, Robin Mapes. Combs-Burge alleges that Mapes's discriminatory conduct began from the moment they met, when Mapes appeared displeased that Combs-Burge had been hired.

According to Combs-Burge, Mapes harassed and discriminated against her in several ways. Combs-Burge contends that she never received training on the SAMMS system and that Mapes denied her request for the training. She also contends that she never received a performance appraisal during the first two-and-a-half years she worked at DSCR. She further alleges that Mapes treated

3

Combs-Burge's white counterparts "much more favorably" and that Combs-Burge and her employees were subjected to heightened scrutiny and additional work assignments compared with other Lead and Supervisory IMS's. An employee under Combs-Burge's supervision stated that Mapes "unfairly and discriminatorily criticized, micro-managed, and harassed Ms. Combs-Burge." (J.A. at 54.) Another DSCR employee whose desk was near Mapes's office stated that Mapes was warm and pleasant toward white employees but that Mapes "constantly nit-pick[ed]" Combs-Burge about the quality of her work. (J.A. at 105.) Combs-Burge also alleges that she was assigned additional work that other Lead IMS's were not required to perform. For example, the helicopters under her responsibility were particularly difficult and demanding systems, and Mapes required her to develop a "get-well plan" for these helicopters.

In March 2001, Combs-Burge complained to Mapes's supervisors that Mapes had discriminated against another African-American employee by giving a white employee a larger performance-based monetary award than the more experienced African-American employee. According to Combs-Burge, after she made this complaint, Mapes told her that she would be "removed from the government or at least demoted." (J.A. at 49.)

In November 2001, Combs-Burge complained to the DSCR Equal Employment Opportunity (EEO) office that she was being harassed. Less than a month later, Mapes issued Combs-Burge a notice of

4

proposed demotion. On February 19, 2002, Combs-Burge filed a formal EEO complaint alleging harassment by Mapes. On June 3, 2002, Colonel Ross Pennington, USMC, the director of business operations for DSCR, demoted Combs-Burge to a GS-11 pay grade.

On July 31, 2002, Combs-Burge filed a formal administrative complaint alleging, inter alia, that her demotion was the result of discrimination.[3] On May 4, 2004, Combs-Burge filed this civil action in district court alleging a racially hostile work environment, race discrimination, and unlawful retaliation.[4] Combs-Burge moved for summary judgment, and the district court denied her motion on November 3, 2004, after concluding that "genuine issues of material fact" existed. (J.A. at 28.)

In response to Combs-Burge's allegations, the DSCR produced evidence showing that Combs-Burge was subjected to increased scrutiny and was eventually demoted because of her unacceptable job performance. This evidence included Records of Counseling that Combs-Burge had received monthly during a nine-month performance

---

[3]Combs-Burge's complaint was a "mixed case" under 37 C.F.R. § 1614.302 because she could have appealed her demotion to the Merit Systems Protection Board. On April 15, 2003, the Defense Logistics Agency notified Combs-Burge that a final decision would be issued due to the mixed nature of her complaint. Shortly thereafter, she filed the instant civil action, and the Defense Logistics Agency then dismissed her complaint.

[4]Combs-Burge's complaint also alleged sex discrimination and a violation of the Equal Pay Act, 29 U.S.C.A. § 206(d) (West 1998). The parties agreed to a dismissal of Combs-Burge's sex discrimination and Equal Pay Act claims. (Appellant's Br. at 3 n.1.)

5

improvement period, in which the DSCR placed her to improve her job performance.[5] Each month, Combs-Burge's performance was reviewed to determine if it fulfilled certain critical elements, and each month her performance was found unacceptable. Although she generally does not dispute the accuracy of these records, Combs-Burge contends that the records "glossed over" the tasks she performed successfully and provided only "a terse recommendation" as to how she could improve her performance.[6] (J.A. at 47.)

The DSCR also explained that Combs-Burge's poor performance prevented her from receiving a required formal annual performance rating for year 2000 –- her first full year at the DSCR –- by its due date of February 15, 2001.[7] The annual performance rating

---

[5]The original performance improvement period was 180 days, but it was extended by ninety days because Combs-Burge's position changed from Lead IMS to Supervisory IMS.

[6]In her brief, Combs-Burge asserts that the Records included a "blatantly false accusation" that she failed to hold regular team meetings. (Appellant's Br. at 21.) Her evidence of this "falsity" is an email she sent on September 21, 2001, to inform Mapes that a conference room was reserved for bi-weekly meetings. Nevertheless, the Record of Counseling for November 2001 indicates that Combs-Burge held only three regular meetings during the entire nine-month performance improvement period, rather than bi-monthly meetings as she was directed. Although an employee supervised by Combs-Burge stated that Combs-Burge held team meetings three times a month, there is no indication that these meetings were "for the purpose of clarifying policies, improving team performance, etc.," as instructed by the Record of Counseling, as opposed to meetings focused on the completion of a particular task. (J.A. at 254.)

[7]Although Combs-Burge acknowledges that an interim performance appraisal dated July 27, 2001, bears her signature, she alleges that the signature was affixed without her consent. Other than her assertions, she presented no evidence to support this allegation.

6

analyzes the employee's performance for the preceding calendar year. Mapes could not give Combs-Burge a formal annual performance rating for 2000, however, because the DSCR regulations do not allow a supervisor to rate an employee as "unacceptable" without first giving the employee an opportunity to improve. Accordingly, when the time came for Combs-Burge's formal annual performance rating for her first full year at the DSCR, Lisa James, a DSCR employee relations specialist, advised Mapes that "the appropriate course of action was to begin counseling Ms. Combs-Burge on her performance and give her an opportunity to improve her performance." (J.A. at 350.) In fact, the first Record of Counseling, dated February 8, 2001, informed Combs-Burge that her performance rating for year 2000 was being deferred until she completed the performance improvement period. On November 14, 2001, at the completion of her performance improvement period, Combs-Burge received a performance rating of unacceptable.

The DSCR also contradicted Combs-Burge's claim that she had not been provided the necessary training. In early 2000, she attended the DLA Supply Management Class, a class that includes instruction on the use of SAMMS. After her performance was found to be deficient, the first Record of Counseling informed her that she would be resent to the DLA Supply Management Class. Although she was scheduled for the class, she missed the first two days of the three-week class because she was sick. Against Mapes's

7

instructions, Combs-Burge failed to attend the remainder of the class, a failure characterized in a Record of Counseling as "unacceptable and inexcusable." (J.A. at 272.)

Finally, the DSCR presented evidence that Combs-Burge's job performance remained unacceptable even after she was reassigned for ninety days to a new job with a different supervisor, who did not know of Combs-Burge's employment history. Nevertheless, she still failed to perform at the level expected for her grade, and about six weeks into her reassignment, her new supervisor approached Colonel Pennington with concerns about Combs-Burge's job performance. Combs-Burge's performance remained unsatisfactory in her new position, and she was demoted.

After presenting this evidence, the DSCR moved for summary judgment, which the district court granted on February 17, 2005.

II.

"Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law." Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992) (en banc); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Catawba Indian Tribe, 978 F.2d at 1339. This

8

burden must be considered in light of the "substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  We review de novo the district court's grant of summary judgment. Catawba Indian Tribe, 978 F.2d at 1339.

1.

Combs-Burge first contends that summary judgment to the DSCR was improper because the district court had previously denied summary judgment to her after concluding that genuine issues of material fact existed.  She argues that the record before the district court had not changed sufficiently to warrant an about-face on the existence of issues of material fact.  This argument misunderstands the nature of a denial of summary judgment.  "When faced with cross-motions for summary judgment, the [district] court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)(internal quotation marks omitted).  In denying summary judgment to Combs-Burge, the district court concluded that the evidence in her favor was weak enough that a reasonable jury could return a verdict for the DSCR; whereas in granting summary judgment to the DSCR, the district court concluded that the evidence in Combs-Burge's favor was so weak that a reasonable jury could not return a verdict for her.  See Anderson, 477 U.S. at 248 (stating

9

that a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The district court's rulings, therefore, were not inconsistent but merely recognized the shift in perspective required to address each party's motions.

2.

To prevail on her claim of a racially hostile work environment, Combs-Burge must show that the harassment was (1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) that there is some basis for imposing liability on the employer. Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). The harassment must be both objectively and subjectively severe or pervasive. Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 21 (1993). The objective severity or pervasiveness of the harassment is judged from the perspective of a reasonable person in the plaintiff's position. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). The district court concluded that the conduct at issue here was not objectively severe or pervasive so as to create an abusive atmosphere. We agree.

The conduct that Combs-Burge alleges created a hostile work environment -- counseling her about performance deficiencies and assigning her remedial tasks to correct those deficiencies -- is not the type of conduct that is objectively abusive because it was

10

the direct result of the documented shortcomings in Combs-Burge's job performance. In addition, Combs-Burge was responsible for difficult and demanding helicopters, and as a result she was assigned additional tasks to support those helicopters. Nevertheless, assigning individuals remedial tasks to correct their job performance and assigning individuals to difficult jobs are not objectively abusive actions, particularly considering that we "do[] not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)(internal quotation marks omitted).

Similarly, although other individuals stated that Mapes "criticized, micro-managed," and "nit-pick[ed]" Combs-Burge about the quality of Combs-Burge's work, Combs-Burge has not shown that "but for" her race this "nit-picking" would not have occurred. Causey, 162 F.3d at 802. In other words, Combs-Burge has not shown that the alleged acts of mistreatment were based on her race rather than her poor job performance. There has been no suggestion that Mapes treated Combs-Burge more harshly than any other employee performing unacceptably. Finally, although Combs-Burge alleges that Mapes was more friendly to white employees than to her, general complaints of rude treatment are not sufficient to sustain a hostile work environment claim. See Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006) (stating that rude treatment by

11

supervisors is "conduct falling short of that required to sustain a hostile work environment claim").

                                    3.

To prove her claim that her demotion was the result of discrimination and retaliation, Combs-Burge relies on the burden-shifting method of proof established by McDonnell Douglas Corp. v. Green 411 U.S. 792, 802 (1973), and its progeny. See Causey, 162 F.3d at 800; Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Under the McDonnell Douglas framework, the employee has the initial burden of establishing a prima facie case of discrimination or retaliation. 411 U.S. at 802. If she establishes a prima facie case, the burden then shifts to the employer to produce a legitimate, non-discriminatory and non-retaliatory reason for the adverse action against the employee. Id. If the employer articulates a legitimate, non-discriminatory or non-retaliatory reason, then the employee must show that the stated reason was false and a pretext for discrimination or retaliation. Id. at 804. In some instances, an employee who has established a prima facie case can meet her ultimate burden of persuasion by proving that the employer's articulated reason is false. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). It is important to note that the burden that shifts to the employer is a burden of production, not persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). At all times the

                                    12

employee retains "the ultimate burden of persuading the court that she has been the victim of intentional discrimination [or retaliation]." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

A.

To establish a prima facie case of discriminatory demotion, Combs-Burge must show that (1) she is a member of a protected class, (2) she was qualified for her job and her performance was satisfactory, (3) despite her qualifications she was removed from her job, and (4) after her removal her job remained open to similarly qualified applicants. Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004). The district court concluded that even if Combs-Burge could establish a prima facie case, she could not demonstrate that the DSCR's proffered reason for her demotion was false. We agree.

The DSCR introduced written documentation that Combs-Burge's job performance did not meet the DSCR's legitimate expectations and that, as a result, the DSCR delayed her annual performance rating and placed her in a performance improvement period for nine months. Although Combs-Burge contends that she was performing satisfactorily, she does not support her assertion with relevant evidence. She did produce evidence that her team performed well, but this evidence does not refute the documented shortcomings of

13

her individual performance, such as her failure timely to inform her subordinates of tasks and her failure to complete projects. Furthermore, although Combs-Burge submitted declarations from other individuals that she was performing satisfactorily, these individuals could not provide a useful appraisal of Combs-Burge's job performance because they were either Combs-Burge's subordinates or individuals in a completely different job, and there is no indication in the J.A. that these individuals were competent to assess whether Combs-Burge was meeting the DSCR's legitimate expectations.[8]  We conclude that Combs-Burge has not introduced sufficient evidence to satisfy her burden of demonstration that the DSCR's proffered legitimate reason for demoting her was false and pretext.  See Love-Lane, 355 F.3d at 789.

B.

To establish a prima facie case of retaliatory demotion, Combs-Burge must show that "(1) she engaged in [a] protected activity[, such as filing an EEO complaint]; (2) that [her employer] took adverse employment action against her; and (3) that a causal connection existed between the protected activity and the

---

[8]Combs-Burge presented one declaration from a Program Analyst at her grade level with whom she worked after her reassignment. This Program Analyst appraised Combs-Burge's work, however, based on a joint project they were assigned in May 2002.  Accordingly, this appraisal is not probative of Combs-Burge's performance as a Lead and Supervisory IMS.

14

adverse action." Williams, 871 F.2d at 457. We assume that Combs-Burge can make out a prima facie case of retaliatory demotion.[9] Nevertheless, as we explained in addressing her discrimination claim, she has not demonstrated that the DSCR's stated non-retaliatory reason for her demotion -- her unacceptable performance -- was false and pretextual. This conclusion is buttressed by the fact that the evidence showed that the DSCR had counseled Combs-Burge on her unsatisfactory job performance and had placed her in a performance improvement period in February 2001 -- well before she complained about the treatment of her African-American co-worker or filed her EEO complaint. See Williams, 871 F.2d at 454, 457 (concluding that an employee could not show that the employer's legitimate reason for the discharge was pretextual because the employer's reason developed before the employee engaged in protected activity).

III.

Because Combs-Burge does not allege conduct that was objectively severe or pervasive, she has not established a hostile work environment. In addition, she has not shown that the DSCR's reason for her demotion was false and pretext; thus, she cannot

---

[9]Because the DSCR does not dispute that a federal employee such as Combs-Burge may pursue a retaliation claim under Title VII, we assume that such a right exists. See Baqir v. Principi, 434 F.3d 733, 748 n.16 (4th Cir. 2006).

15

establish that her demotion was the product of discrimination or retaliation.  We therefore affirm the district court's grant of summary judgment to the Secretary.

AFFIRMED