

# NUMBER 13-24-00049-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SOUTH TEXAS COLLEGE,                                                       Appellant,

v.

DANIEL FUENTES,                                                           Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 9
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Cron**

Following his termination, appellee Daniel Fuentes sued his former employer South Texas College (STC) based on claims of hostile work environment, retaliation, and age and disability discrimination. STC challenged the trial court's subject matter jurisdiction through a no-evidence and traditional motion for summary judgment, which

the trial court denied. By five issues, which we construe as four, STC maintains that Fuentes failed to establish a prima facie case for each of his claims; that Fuentes was terminated for a legitimate, nondiscriminatory, non-retaliatory reason; and that Fuentes failed to raise a genuine issue of material fact on whether that reason was pretextual. We reverse and render.

## I.  BACKGROUND

STC hired Fuentes as a custodian in 1987 and eventually promoted him to the position of lead custodian. Fuentes reported to Roel Moroles, and it was Moroles who initially recommended Fuentes's termination in August 2020. After several layers of administrative review, STC's president approved the recommendation, and Fuentes was terminated on October 9, 2020, at the age of fifty-two. Fuentes then filed suit claiming that, prior to his termination, STC "subjected [him] to discriminatory animus, disparate treatment and/or a hostile work environment on account of his age[,] . . . on account of his disability (diabetes and anxiety) and/or for engaging in protected activity."

After the parties conducted discovery, STC filed a motion for summary judgment raising numerous jurisdictional arguments on each of Fuentes's claims (the "plea to the jurisdiction"). STC first argued that this is a circumstantial evidence case because Fuentes has no direct evidence to support any of his claims. STC then alleged that Fuentes could not establish a prima facie case for any of his claims because there was no evidence of the following:

- That Fuentes was qualified for his position.
- That Fuentes was replaced by someone significantly younger.

2

- That Fuentes was treated less favorably than a similarly situated employee.

- That Fuentes suffered an adverse employment decision because of a disability.

- That Fuentes engaged in a protected activity.

- A causal link between a protected activity and an adverse employment action.

- Harassment so severe or pervasive that it altered the conditions of employment.

- That any alleged harassment was based on Fuentes's age or disabilities.

- That STC was aware of harassment but failed to take corrective action.

STC also argued that Fuentes was terminated for a legitimate, nondiscriminatory, non-retaliatory reason, namely, because Fuentes had been reprimanded numerous times for failing to adequately perform one of his essential job duties. STC further argued that it conclusively negated certain elements of Fuentes's claim. STC supported these latter two arguments with evidence, including the transcript from Fuentes's deposition, STC's job description for Fuentes's position, written reprimands issued by Moroles to Fuentes, an internal email from Moroles recommending Fuentes's termination, an internal memorandum from several administrators recommending Fuentes's termination, the president's approval of the termination, and a letter of termination. Finally, STC suggested that Fuentes could not produce any evidence that its stated reason for terminating Fuentes was pretextual.

## A.   STC's Jurisdictional Evidence

One of Fuentes's "essential duties and responsibilities" as lead custodian was to secure and maintain an inventory of "all janitorial supplies and equipment." This included documenting the distribution of supplies and submitting a weekly report to Moroles that

3

would then be forwarded to the procurement department so that additional supplies could be purchased when necessary. The head of the procurement department or an auditor would then conduct a physical count of the inventory and compare it to the report. It is undisputed that some of Fuentes's inventory reports were inconsistent with the physical counts. Fuentes estimated during his deposition that he made "five" or "six" "mistakes with inventory control," which he chalked up to "human error." Fuentes acknowledged that Moroles admonished him on "several" occasions for "missing" inventory.

According to STC's employment records, on April 11, 2019, Moroles notified Fuentes in writing that a "physical count" of the janitorial supplies and equipment did "not match" Fuentes's inventory report because items "were missing." The notice also stated that Fuentes could not explain the "discrepancies" and warned that "if this should continue, further disciplinary action and or termination will be taken." Fuentes received a "final written reprimand" on December 3, 2019, concerning "a shortage of seven (7) cases of paper towels." STC's records also show that Moroles verbally counseled Fuentes on at least seven separate occasions before issuing the final written warning.

It is undisputed that after these problems arose, STC provided Fuentes with additional inventory training in April 2019. Fuentes stated in his deposition, however, that these "one-hour training" sessions were "not enough" because he was having "a little bit of difficulty" with "the numbers" and "needed to learn a little bit more."

Although Fuentes acknowledged that he was blameworthy for some of the inventory issues, he claimed that the written reprimands were unwarranted because Moroles failed to "make an effort of investigating the reason why" the discrepancies arose.

4

Fuentes believed that at least some of the inventory mistakes were attributable to other employees who also had access to the supply warehouse, but despite Fuentes expressing his concerns, Moroles continued to maintain that Fuentes was solely to blame.

According to Fuentes, Moroles began unfairly scrutinizing his work performance because Moroles held "a grudge against [him]." When asked to explain the source of this "grudge," Fuentes claimed during his deposition that Moroles became upset with him because Moroles had to mediate a dispute between Fuentes and another employee in December 2019:

> Q.   And you think that—that you're saying that Roy Moroles had a grudge against you because another employee complained about you?
>
> A.   Yes.
>
> Q.   And that Roy Moroles, this grudge he had against you was because he had to deal with the conflict between you and this other employee who you did not let go home early on a certain day?
>
> A.   Exactly.

When asked if there was "any other reason" for the "grudge," Fuentes acknowledged that he would openly criticize his supervisor during work meetings for violating STC policies: "[E]very time we had meetings, I would throw something [out] that [Moroles] had done in the past."

After meeting with Fuentes and the other employee, Moroles told Fuentes he was being transferred to another STC campus "to cool things off." Fuentes thought this was unfair because he was "not the one that caused the problem," but Moroles insisted that Fuentes should be the one to transfer. Fuentes believed that Moroles was showing

5

favoritism towards the other employee because Moroles "knew some kind of family member" of the employee.

At some point, Fuentes told Moroles that he was "feel[ing] stressed and stuff like that," and Moroles encouraged him to see a doctor. Sometime after, Fuentes called STC's human resources department and reported that he "was feeling harassed" and that Moroles "was causing [a] hostile environment[]." He asked for medical leave because he was feeling "pressured by [Moroles]," and said this "pressure" was negatively affecting his health, including his diabetes. He said that Moroles knew that he was diabetic but denied that Moroles was harassing him "because of" his condition, acknowledging instead that it was "because of the inventory problems."[1]

STC granted Fuentes medical leave after his doctor provided a medical certification. According to Fuentes, the "week" he returned to work, Moroles asked him "several times," "Why don't you retire?" and "When are you going to retire?" Fuentes testified that he had "no idea" why Moroles said that to him, but he suspected that Moroles "had something coming up" because another employee had previously warned Fuentes that Moroles was "trying to fire [him]."

Another inventory discrepancy arose on August 3, 2020. According to an internal email authored by Moroles, instead of taking responsibility, Fuentes blamed others, as he had done in the past. Moroles provided Fuentes with the opportunity to provide a written

---

[1] Fuentes testified as follows:

Q.      Okay. So do you believe that Roel Moroles was harassing you because of the inventory problems or because you had diabetes?

A.      No, because of the inventory problems.

6

response, and Fuentes wrote the following:

> German Reyes and myself were in the Supply Room discussing about inventory issues, when suddenly Mr. Roy Moroles approached us and interfered with our conversation. Mr. Roy Moroles question was "Why is my inventory most of the time wrong, and that I don't count the inventory". He talked to me in a raised tone of voice, and in the moment I[,] Daniel Fuentes[,] felt that I was being harassed by Mr. Roy Moroles. I feel that he wants to fire me, the reason I say this is because there have been other bigger issues with our custodial staff for many years. Mr. Moroles has not been able to fix the problems, and when things like this happen our staff moral[e] goes down. There have been several staff members that have said that a manager's job description is not only managing the department and staff but it is also solving problems that arise. We have noticed that there is no solution for these types of issues.

After this incident, Moroles recommended Fuentes's termination. His recommendation was reviewed and approved by several senior administrators over the next couple of months. STC's then-president, Dr. Shirley Reed, made the final decision to terminate Fuentes on October 9, 2020.

During his deposition, Fuentes acknowledged that Moroles never made any derogatory comments about his age, but Fuentes claimed that his age "might" have been a motivating factor in his termination because Moroles "knew" that he "had diabetes." Fuentes also testified that he was replaced by Lydia Mora, whom he described as being one or two years younger than himself. He agreed that Mora, who was a long-time custodian at STC, was qualified for the position of lead custodian.

Fuentes provided an additional example of alleged discrimination in his deposition errata sheets: Moroles insisted on performing Fuentes's annual evaluation, even though that task was normally performed by another supervisor, and unlike previous years, Fuentes received a poor evaluation, which Fuentes described as "unfair." He also alleged

7

that during the evaluation, Moroles used a "hostile" tone of voice "and continue[d] to harass [him] in regards to the shortage in inventory."

## B.     Fuentes's Response & Jurisdictional Evidence

Fuentes acknowledged in his response that he has no direct evidence of discrimination or retaliation and that STC articulated a lawful reason for his termination. He insisted, though, that the jurisdictional evidence established a prima facie case for each of his claims, as well as a genuine issue of material fact about whether STC's stated reason for his termination was pretextual. In addition to relying on the evidence already submitted by STC, Fuentes proffered an affidavit, which included the following testimony:

4.      For the 33 $^{1/2}$ years that I was employed with [STC], I performed my duties with hard work, dedication and undivided loyalty. During the last six months, I was denied equal employment opportunity and was further subjected to discriminatory animus, disparate treatment and/or a hostile work environment in the form of age, and/or disability discrimination as well as retaliation.

5.      [STC] failed to follow its own equal employment opportunity policies with regard to enforcement of the age and disability discrimination statutes. As a younger worker, I was treated with respect, however, as I got older [STC] treated me as damaged goods. Shortly after my relocation, I was replaced by a younger worker who took over my responsibilities. Additionally, younger healthier employees were not subjected to relocation in a discriminatory manner.

6.      The stated reason for my termination—poor performance[—]is false, discriminatory and is a pretextual reason. I could perform any position within [STC]'s custodial department and rather than offer me a position transfer, I was illegally terminated and forced to retire. The alleged poor performance on my part was merely a rouse designed to mask discriminatory actions by [STC].

7.      With regard to age discrimination I would show unto the court that I am over the age of 40; that I am qualified for the job, Lead Cust[o]dian[,] or any job that is consistent with my disabilities due to diabetes and that persons younger than me have been treated more

8

favorably by [STC]. Additionally, after I came back from leave, I was asked by Mr. Moroles, "Why don't you retire?" and "When are you going to retire?" I was concerned by this statement because I was significantly over the age of forty and I was being told to retire without any reasonable explanation other than blatant age discrimination.

8.      With regard to disability discrimination, I would show unto the court that I have a disability (namely, diabetes and anxiety); that with or without a reasonable accommodation I am qualified for the job; I am a qualified individual with a disability, who either with or without a reasonable accommodation can perform the essential functions of my job. Additionally, persons without a disability were treated more favorably in the workplace than I was. I was replaced by a younger person that did not have any disabilities that I was aware of and this is further evidence of discrimination.

9.      With regard to retaliation, I opposed a discriminatory practice when I went to visit Hilda in Human Resources to complain about the discriminatory treatment that I was recieving [sic] from Mr. Moroles. Shortly after reporting this information to Human Resources, I was terminated for alleged poor performance which is false and/or pretextual.

## C.      STC's Response

STC filed a response objecting to Fuentes's affidavit as conclusory and self-serving. STC also suggested that Fuentes made several fatal admissions in his deposition. Although it did not use the term "sham affidavit," STC argued that the conclusory statements in Fuentes's affidavit directly contradicted his prior sworn testimony. Finally, STC concluded that the admissible evidence in the record was insufficient to establish a prima facie case for any of Fuentes's claims.

## D.      Trial Court's Ruling

The trial court held a hearing and took the matter under advisement. The trial court subsequently denied STC's plea but did not rule on STC's objections to Fuentes's affidavit. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE

9

§ 51.014(a)(8).

## II. STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction over a plaintiff's claim is generally a question of law we review de novo. *Sampson v. Univ. of Tex. at Aus.*, 500 S.W.3d 380, 384 (Tex. 2016).

Governmental entities are generally immune from suits for money damages unless the Legislature has expressly waived immunity for the type of claim asserted. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008) (*Garcia I*). This immunity from suit deprives the trial court of subject matter jurisdiction over the plaintiff's claims and may be properly raised in a plea to the jurisdiction or a motion for summary judgment. *City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011). "A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction." *Town of Shady Shore v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Thus, when a plaintiff sues a governmental entity, they must allege facts that fall within a legislative waiver of immunity. *Id.* A governmental defendant may challenge the trial court's jurisdiction by attacking the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

When a governmental defendant challenges the existence of jurisdictional facts and supports its argument with evidence, "the standard of review mirrors that of a traditional summary judgment." *Town of Shady Shores*, 590 S.W.3d at 550. If the

governmental entity's evidence establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve, and if the plaintiff fails to do so, the trial court should rule on the jurisdictional question as a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). "[I]n evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022).

After adequate time for discovery, a governmental entity may also challenge the existence of jurisdictional facts through a no-evidence motion for summary judgment. *Town of Shady Shores*, 590 S.W.3d at 551. The governmental entity must first identify an element of a claim for which there is no evidence. *Id.* (citing TEX. R. CIV. P. 166a(i)). It is then incumbent upon the plaintiff to create a genuine issue of material fact by producing "more than a scintilla of evidence establishing the existence of the challenged element." *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Ridgway*, 135 S.W.3d at 601. "Conclusory affidavits are not enough to raise fact issues." *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Doherty v. Old Place, Inc.*, 316 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Conclusory statements without factual support are not credible, and are not susceptible to being readily controverted."). As with a jurisdictional challenge on traditional summary judgment grounds, we view the evidence in the light

11

most favorable to the plaintiff. *Ridgway*, 135 S.W.3d at 601.

Chapter 21 of the Texas Labor Code prohibits employers from discriminating against employees "because of race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE § 21.051. Chapter 21 also prohibits employers from retaliating against employees for engaging in certain protected activities, such as reporting discrimination internally. *Id.* § 21.055.

Chapter 21 "waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights*, 544 S.W.3d at 770; *see* TEX. LAB. CODE § 21.254 (permitting an employee to "bring a civil action against" their employer). A plaintiff who fails to allege a viable claim under Chapter 21 is subject to dismissal for want of jurisdiction. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012) (*Garcia II*). Likewise, once a claim under Chapter 21 fails on evidentiary grounds, the alleged waiver evaporates, and the trial court should dismiss the claim for want of jurisdiction. *Alamo Heights*, 544 S.W.3d at 763 ("By intertwining [Chapter 21's] immunity waiver with the merits of a statutory claim, the Legislature ensures public funds are not expended defending claims lacking sufficient evidence to allow reasonable jurors to find the governmental entity liable."). Because Chapter 21 was modeled after Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990, *see* TEX. LAB. CODE § 21.001(1), (3), Texas courts are guided by federal precedent to the extent that Chapter 21 and those federal statutes are analogous. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (citing *Garcia II*, 372 S.W.3d at 634).

Violations of Chapter 21 can be established with either direct or circumstantial

12

evidence, and for cases based on circumstantial evidence—like this one—Texas courts employ the three-part *McDonnell Douglas* burden-shifting framework. *Alamo Heights*, 544 S.W.3d at 781–82 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). First, the employee must establish a prima facie case, which gives rise to a rebuttable presumption that a statutory violation occurred. *Id.* at 782 (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–54 (1981)). "Although the precise elements of this showing will vary depending on the allegations, . . . the plaintiff's burden at this stage of the case 'is not onerous.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (quoting *Burdine*, 450 U.S. at 253). The employer may then rebut this presumption by offering a legitimate, nondiscriminatory, non-retaliatory reason for the disputed employment action. *Alamo Heights*, 544 S.W.3d at 781–82 (citing *Burdine*, 450 U.S. at 254–55). This is a burden of production, not persuasion, and involves no credibility assessment. *Reeves v. Anderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Alamo Heights*, 544 S.W.3d at 782 (citing *Burdine*, 450 U.S. at 255–56). Whether summary judgment is appropriate at this stage will depend on a "number of factors," including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

13

For claims against government employers, each step of the *McDonnell Douglas* analysis is jurisdictional in nature. *Id.* at 783. Thus, "[f]or a plaintiff who proceeds along the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under [Chapter 21]." *Garcia II*, 372 S.W.3d at 637. A plaintiff's failure to make a prima facie case "means the plaintiff never gets the presumption of discrimination," and the claim should be dismissed because the trial court lacks jurisdiction. *Id.*

### III.    AGE DISCRIMINATION

By its first issue, STC contends the trial court erred by failing to dismiss Fuentes's age discrimination claim. To establish a prima facie case of age discrimination, an employee must show that he: (1) was 40 years of age or older, (2) was qualified for the position, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 709 S.W.3d 500, 505 (Tex. 2024) (*Flores II*); *see* TEX. LAB. CODE § 21.101 ("The provisions of this chapter referring to discrimination because of age or on the basis of age apply only to discrimination against an individual 40 years of age or older."); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (holding that an inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger"). Fuentes pleaded that "he was replaced by a younger worker, that his termination was on account of his age or that he was treated differently than persons outside the protected class." STC challenged Fuentes to produce

14

more than a scintilla of evidence to satisfy the fourth element of his prima facie claim and maintains on appeal that Fuentes failed to do so.

We conclude that Fuentes failed to produce any evidence that he was replaced by someone "significantly younger." *See Flores II*, 709 S.W.3d at 505. The minimum threshold for when a replacement qualifies as "significantly younger" remains an open question, but courts agree that an age difference of three years or less is insignificant as a matter of law. *See, e.g.*, *Hartis v. Mason & Hanger Corp.*, 7 S.W.3d 700, 705 (Tex. App.—Amarillo 1999, no pet.) (holding that three-year age difference was insufficient); *Acosta v. Gov't Emps. Credit Union*, 351 S.W.3d 637, 643 (Tex. App.—El Paso 2011, no pet.) ("A four-year age difference is insignificant."); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–40 (6th Cir. 2003) (surveying federal case law and holding that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant"). Fuentes testified that he is one or two years older than his replacement. Consequently, Fuentes failed to establish a prima facie case of age discrimination based on the theory that he was replaced by someone "significantly younger." *See Hartis*, 7 S.W.3d at 705; *Acosta*, 351 S.W.3d at 643.

There is also no evidence in the record that Fuentes was treated less favorably than others who were similarly situated but outside of his protected class. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 312 (Tex. 2020) (*Flores I*) (quoting *Ysleta Indep. Sch. Dist. v.*

15

*Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)). Their circumstances must be "nearly identical." *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (per curiam). "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Id.* A plaintiff proceeding under this approach "cannot rely merely on evidence that" he was terminated because of his age, "but instead must provide evidence that he was treated less favorably than those who did not fit within the protected class." *Flores I*, 612 S.W.3d at 312 (citation modified).

Fuentes alleges in his petition that he was "wrongfully terminated" because of his age.[2] By his own admission, Fuentes made "five" or "six" "mistakes with inventory control" as lead custodian, but he has not identified any other lead custodian with a similar disciplinary record who was treated more favorably. *See id.* In fact, Fuentes has not identified any specific comparators. Instead, he merely testified that he was treated with more "respect" when he was younger. Consequently, Fuentes "cannot establish the fourth element of a prima facie case under the disparate-treatment approach." *Id.* We conclude

---

[2] Fuentes does not identify his reassignment to another STC campus as an adverse employment decision in his petition; his only claims are for hostile work environment and wrongful termination. And although he discusses his reassignment in his affidavit, the record does not establish that his reassignment was an adverse employment decision because he maintained the same job title, duties, and salary. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332–33 (5th Cir. 2009) (finding no adverse employment action taken where plaintiff's reassignment did not affect her job title, grade, hours, salary, or benefits, her duties were unchanged, and there was no evidence that she suffered diminution in prestige or change in standing among her co-workers).

Even if the evidence established that his reassignment constituted an adverse employment action, the claim would be jurisdictionally barred because he failed to timely exhaust his administrative remedies with respect to such a claim. *See* Tex. Lab. Code § 21.202(a) (providing that an administrative complaint "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred"); *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012) (explaining that failure to file a complaint within the 180-day window constitutes a jurisdictional bar to suit). Although Fuentes's charge of discrimination was timely with respect to his termination, he filed the charge approximately sixteen months after his reassignment. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act.").

the trial court erred by failing to dismiss this claim. STC's first issue is sustained.

## IV. DISABILITY DISCRIMINATION

STC argues by its second issue that the trial court erred by denying its plea as to Fuentes's disability discrimination claim. To establish a prima facie case of disability discrimination, a plaintiff must show: (1) he has a disability; (2) he was qualified for the job; and (3) he suffered an adverse employment action because of his disability. *Lara*, 625 S.W.3d at 61; *County of El Paso v. Flores*, 677 S.W.3d 31, 44 (Tex. App.—El Paso 2023, pet. denied); *see* TEX. LAB. CODE § 21.051. Chapter 21 defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB. CODE § 21.002(6). Fuentes's alleged disabilities are diabetes and anxiety. STC argues on appeal, as it did in the trial court, that Fuentes failed to produce prima facie evidence that he was qualified for the position or that either of his alleged disabilities was a motivating factor in his termination. STC also argues that it offered a legitimate, nondiscriminatory reason for Fuentes's termination and that Fuentes failed to produce sufficient evidence of pretext.

For this particular claim, we will assume without deciding that Fuentes established a prima facie case of disability discrimination. *See Tex. Dep't of State Health Servs. v. Kerr*, 643 S.W.3d 719, 735 (Tex. App.—Amarillo 2022, no pet.) (assuming prima facie case where employee failed to rebut employer's legitimate, nondiscriminatory reason for termination). It was uncontested in the trial court that STC offered a legitimate, nondiscriminatory reason for Fuentes's termination—poor job performance. Accordingly,

17

the burden shifted to Fuentes to raise a genuine issue of material fact about whether that reason was both "false and a pretext for discrimination." *Alamo Heights*, 544 S.W.3d at 782.

By admitting in his deposition that he made inventory mistakes on "five" or "six" occasions, it is difficult for Fuentes to raise a genuine issue of material fact as to whether his termination for poor job performance was false. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (finding employee "clearly failed" to show pretext where employee was fired for poor job performance and admitted to making several mistakes in her deposition). Even if some of Moroles's criticisms about Fuentes's job performance were undeserved, as Fuentes claims, this fact is not sufficient to show pretext. *See Hudgens v. Univ. of Tex. MD Anderson Cancer Ctr.*, 615 S.W.3d 634, 644 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("The issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the employment determination."); *Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."). This is so because "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

Moreover, this case contains none of the potential hallmarks of falsity. *See Reeves*, 530 U.S. at 148–49. For example, STC has consistently maintained that Fuentes was terminated for poor job performance. *See Tex. Health & Hum. Servs. v. Sepulveda*,

668 S.W.3d 856, 868 (Tex. App.—El Paso 2023, no pet.) ("[P]roviding inconsistent and shifting explanations for an adverse employment decision can give rise to an inference of pretext."). Indeed, Fuentes admitted during his deposition that Moroles admonished him "several" times about "missing" inventory and that he received additional inventory training to correct the problem. Additionally, it is undisputed that Fuentes received written warnings, including a "final warning," about his inventory control issues, and Fuentes has not offered any evidence that STC violated its disciplinary system. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) (acknowledging "that when an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext"). Further, Fuentes also testified that he received a poor job review prior to his termination. *See Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (finding a fact issue on pretext because, among other evidence, employer's explanation for non-selection was contradicted by employee's recent job evaluation).

Finally, Fuentes's prima facie evidence of causation in this case is weak. *See Reeves*, 530 U.S. at 148–49. Notably, Fuentes expressly disclaimed in his deposition that Moroles's scrutiny of his job performance was "because of" his diabetes, which would be necessary to show causation. *See Alamo Heights*, 544 S.W.3d at 782. Regardless, the only prima facie evidence Fuentes directs the Court to is his affidavit, where he conclusorily stated, "[P]ersons without a disability were treated more favorably in the workplace than I was." Having provided no factual basis to support his conclusion, Fuentes's bald allegation of disparate treatment is not competent summary judgment

19

evidence. *See Doherty*, 316 S.W.3d at 845. He also alleged in his affidavit that his replacement, Mora, "did not have any disabilities that [he] was aware of." This is the extent of his prima facie evidence of disability discrimination. This fact alone, however, is insufficient to raise a fact issue on causation. *See* TEX. LAB. CODE § 21.061. ("In the absence of other evidence of an unlawful employment practice, evidence of the employment of one person in place of another is not sufficient to establish an unlawful employment practice.").

We conclude that there is no evidence in the record that would support a reasonable inference that STC's offered reason for Fuentes's termination was pretextual. Accordingly, the trial court erred in failing to dismiss this claim. We sustain STC's second issue.

## V. RETALIATION

By its third issue, STC argues the trial court should have dismissed Fuentes's retaliation claim. "A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not. Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, such as making a discrimination complaint." *Alamo Heights*, 544 S.W.3d at 763–64. To establish a prima facie case of retaliation, the plaintiff must show: (1) he engaged in protected activity; (2) he experienced an adverse employment action; and (3) there was a causal link between the two. *Id.* at 782. To engage in a protected activity, such as making an internal complaint, the employee is not required to use "magic words," but the complaint "must at least alert an employer to the employee's reasonable belief that

20

unlawful discrimination is at issue." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 586 (Tex. 2017) (quoting *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam)).

STC contends that Fuentes failed to produce any evidence that he made a qualifying complaint. Fuentes generally alleged in his affidavit that he made a complaint to the human resources department "about the discriminatory treatment that [he] was recieving [sic] from Mr. Moroles," but he did not go into any detail about what he reported. Similarly, Fuentes generally testified in his deposition that he reported to human resources about "feeling harassed" and that Moroles "was causing [a] hostile environment[]." He also asked for medical leave because he was feeling "pressured by [Moroles]," and this "pressure" was negatively affecting his health. This evidence is insufficient to establish that Fuentes put his employer on notice that he reasonably believed that Moroles was mistreating him because of his age or alleged disabilities. *See Alamo Heights*, 544 S.W.3d at 786–87 (complaining generically of "harassment," "hostile environment," "discrimination," or "bullying" does not trigger the TCHRA's anti-retaliation protection). We conclude the trial court erred in failing to dismiss Fuentes's retaliation claim. STC's third issue is sustained.

## VI.    HOSTILE WORK ENVIRONMENT

STC's fourth issue concerns Fuentes's hostile work environment claim. "A hostile work environment claim 'entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment.'" *Donaldson v. Tex. Dep't of*

*Aging & Disability Servs.*, 495 S.W.3d 421, 445 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (quoting *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.—Texarkana 2008, pet. denied)). The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.). An employee complaining of harassment by a supervisor, as occurred here, need only show the first four elements. *Id.*

The complained-of conduct must be both objectively and subjectively hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). That is, in addition to the employee's subjective belief, the work environment must be one "that a reasonable person would find hostile or abusive." *Id.* at 21. "Abusiveness requires extreme conduct and takes a middle path between making actionable conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 913 (Tex. App.—El Paso 2015, no pet.) (citing *Harris*, 510 U.S. at 21). We consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

We agree with STC that the conduct Fuentes complains of, taken as true, does not support an inference of sufficiently pervasive or severe harassment to support his disability- or retaliatory-based hostile work environment claim. Most of Fuentes's allegations concern Moroles criticizing the quality of his work. But criticism of an employee's work performance and careful monitoring of job performance typically do not amount to a hostile work environment. *See Gonzales v. Wells Fargo Bank, Nat'l Ass'n*, 733 F. App'x 795, 798 (5th Cir. 2018) ("'[C]areful monitoring of job performance' . . . does not rise to the level of hostile work environment harassment."); *Credeur v. La. ex rel. of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017) ("Criticism of an employee's work performance . . . and even threats of termination do not satisfy the standard for a harassment claim."). Similarly, "heightened scrutiny of an employee by a supervisor" generally cannot "support a hostile work environment claim." *Robinson v. Paulson*, No. CIV.A. H-06-4083, 2008 WL 4692392, at *18 (S.D. Tex. Oct. 22, 2008) (collecting cases). "Those general rules are not absolute—criticism or heightened scrutiny can be relevant to a hostile environment claim where they rise to a very high level or are part of a more broadly hostile environment." *Cobos v. Decypher Techs., Ltd.*, No. SA-24-CA-01470-XR, 2025 WL 3215364, at *10 (W.D. Tex. Nov. 10, 2025) (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236–37 (5th Cir. 2001)).

No such evidence exists here. First, Fuentes acknowledged responsibility for "five" or "six" "mistakes with inventory control," which means Moroles's criticism of Fuentes's job performance in those instances was warranted. *See Combs–Burge v. Rumsfeld*, 170 F. App'x 856, 862 (4th Cir. 2006) (unpublished) (stating that "counseling [an employee]

23

about performance deficiencies and assigning her remedial tasks to correct those deficiencies . . . is not the type of conduct that is objectively abusive because it was the direct result of the documented shortcomings in [the employee's] job performance"). Fuentes's remaining evidence does not rise to the level of a hostile work environment. Fuentes identified two meetings where Moroles used "a raised tone of voice" that Fuentes described as "hostile." He also testified that during a single "week," Moroles made "several" comments to him suggesting that he should retire. Although he originally testified that he had "no idea" why Moroles made those comments, he later testified by affidavit that he interpreted the comments as being ageist.[3] Even if the comments were ageist, "several" mildly offensive comments over the course of a single "week" and two instances where Moroles "raised" his voice at Moroles do not amount to objectively severe or pervasive conduct that affected the terms and conditions of Fuentes's employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"). Finally, Fuentes testified that, after his dispute with another employee, Moroles unfairly transferred him to another STC campus, but Fuentes himself attributed that decision to Moroles's personal relationship with the other employee rather than his alleged discriminatory or retaliatory animus towards Fuentes. We conclude the trial court erred by failing to dismiss this claim,

---

[3] STC has not carried forward its prior objection that Fuentes's affidavit conflicted with his prior testimony, so we express no opinion on the matter. *See* Tex. R. App. P. 47.1; *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018) (explaining that, under the sham affidavit doctrine, "a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict").

and we sustain STC's fourth issue.

## VII.   Conclusion

We reverse and render a judgment of dismissal for want of jurisdiction.

JENNY CRON
Justice

Delivered and filed on the
15th day of January, 2026.

25